IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHEILA ROWE,                    )
                                )
            Plaintiff,          )
                                )
v.                              )
                                )        1:08-cv-136
NORTH CAROLINA AGRICULTURAL     )
AND TECHNICAL STATE             )
UNIVERSITY,                     )
                                )
            Defendant.          )

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge

    Plaintiff Sheila Rowe ("Rowe") was denied promotion and tenure at Defendant North Carolina Agricultural and Technical State University ("NC A&T"). She brings this case alleging sex discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a) & 2000e-3. Before the court is NC A&T's motion for summary judgment. (Doc. 16.) For the reasons to follow, the motion will be granted and the case dismissed.

**I.  FACTS**

    Rowe is an African-American female who received a Ph.D. in Industrial Education and Technology from Iowa State University in December 2001. In March 2002, NC A&T hired Rowe as an Assistant Professor in the Department of Manufacturing Systems in its School of Technology. (Doc. 16, Ex. 7, Ex. 1.) She was

initially hired on a one-year contract, which was subsequently renewed with back-to-back two-year appointments through 2008. (Id., Ex. 9 at 16-17, 68.) Rowe resigned her position with NC A&T in August 2007. (Id., Ex. 9 at 9.)

This case arises from Rowe's attempt to secure promotion to Associate Professor and tenure in the 2006-07 academic year.[1] According to NC A&T's Regulations on Academic Freedom, Tenure, and Due Process ("University Tenure Regulations"), each department and school within NC A&T has its own Committee for Reappointments, Promotions, and Tenure ("RPT"). (Id., Ex. 8, Ex. 1.) The departmental RPT sends its recommendations to the school's RPT, which then sends recommendations to the dean of the school. (Id., Ex. 8, Ex. 1 § 3(D).) The dean then forwards his or her recommendation to the provost. (Id., Ex. 8, Ex. 1) If two or more of the department RPT, the school RPT, and the dean recommend against advancement, the application package is forwarded to the provost with a negative recommendation. (Id., Ex. 8, Ex. 1) If the provost upholds the negative recommendation, the application is forwarded to the chancellor for a final decision. (Id., Ex. 8, Ex. 1) In this case, Rowe's

---

[1] Rowe initially applied for promotion to Associate Professor and tenure during the 2005-06 academic year, which was denied. (Doc. 16, Ex. 9 at 20-24, Ex. 2 ¶ 9 (finding Rowe's application "disorganized" and "lack[ing] a sufficient record of research or publications").)

application for promotion and tenure followed the proscribed procedure.

On October 18, 2006, Rowe submitted her portfolio and application to the three-member Department of Manufacturing Systems RPT ("Department RPT"). (Doc. 19, Ex. 1.) The Department RPT met on November 6, 2006, to review Rowe's candidacy and voted 2-1 against her application for promotion and tenure. (Doc. 16, Ex. 7 ¶¶ 9, 12.) Among the reasons cited for the denial was Rowe's lack of accomplishment in the area of research, grants, and publications. (Id., Ex. 7 ¶ 10.) Rowe was notified of the result and provided a written response on November 14, 2006. (Id., Ex. 7 ¶ 14.) The Department RPT concluded that Rowe's response did not merit re-evaluation. (Id., Ex. 7 ¶ 14.)

Rowe's application was then forwarded to the five-member School of Technology RPT ("School RPT") for review. In voting 5-0 against her application, the School RPT members pointed to Rowe's lack of accomplishment in the area of research and publications. (Id., Ex. 1 ¶¶ 11-12.)

The recommendations of the Department RPT and School RPT were delivered to Earnest Walker, the interim dean of the School of Technology, who conducted his own review of Rowe's candidacy. (Id., Ex. 8 ¶ 7.) He concurred with the recommendations to deny Rowe's application and noted specifically his belief that "Rowe

3

needed additional time to grow in the area of research, grants, and publications." (Id., Ex. 8 ¶ 10.) On January 12, 2007, Walker sent the Interim Provost, Janice Brewington, a memorandum recommending a denial of Rowe's application for promotion and tenure. (Id., Ex. 8, Ex. 4.)

On April 20, 2007, Provost Brewington sent Rowe a letter indicating she could not provide a positive recommendation to the Chancellor for her promotion and tenure application. (Id., Ex. 8, Ex. 5.) Brewington's letter noted specifically, "[i]t appears from your documentation that little scholarly work and research have been generated in the last five years." (Id., Ex. 8, Ex. 5.) On May 15, 2007, Chancellor Lloyd Hackley provided written notice to Rowe that he was not supporting her request for promotion and tenure. (Id., Ex. 8, Ex. 6.) Chancellor Hackley's letter noted, "[a]lthough contributions in service to the University community and teaching are notable, distinction in research and scholarly works needs to be enhanced." (Id., Ex. 8, Ex. 6.)

On March 20, 2007, Rowe filed a charge of sexual harassment with the Equal Employment Opportunity Commission ("EEOC"). (Doc. 8, Ex. A ¶ 7.) Rowe subsequently filed a second complaint

4

with the EEOC, alleging sex discrimination and retaliation.[2]  On

October 16, 2007, the EEOC issued a right to sue letter.[3]

On January 16, 2008, Rowe filed suit against NC A&T in the

Guilford County, North Carolina, Superior Court, alleging sex

discrimination[4] and retaliation in violation of Title VII.  (Id.,

Ex. A.)  NC A&T removed this case pursuant to 28 U.S.C. § 1441

(Doc. 8), where jurisdiction exists under 28 U.S.C. § 1331.

## II.  ANALYSIS

### A.  Standard of Review

Summary judgment is appropriate where an examination of the

pleadings, affidavits, and other proper discovery materials

demonstrates that no genuine issue as to any material fact

exists, thus entitling the moving party to judgment as a matter

of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477

---

[2]  Rowe does not indicate the date of her second EEOC complaint.
However, her deposition indicates that it was filed sometime in April
2007.  (Doc. 16, Ex. 9 at 98-100.)

[3]  The 90-day statutory limitations period for filing a civil action
runs from the date a complainant receives her right to sue letter.  42
U.S.C. §2000e-5(f)(1); Davis v. N.C. Dep't of Corr., 48 F.3d 134, 140
(4th Cir. 1995).  Rowe does not indicate when she received her right
to sue letter.  However, under Fed. R. Civ. P. 6(d), three days is
added to the deadline for filing a complaint if service is completed
by mail.  See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 148
n.1 (1984) (applying 3-day rule to Title VII case where date of
receipt was not pleaded).  Applying the 3-day rule, this lawsuit
appears timely filed on January 16, 2008, 89 days after the October
16, 2007, right to sue letter was presumptively received on October
19, 2007.

[4]  The Complaint alleges only sex discrimination (Doc. 8); however, NC
A&T raises both sex and race discrimination in its motion for summary
judgment, and Rowe responds to both (Docs. 16-20).  For the purposes
of this summary judgment motion, therefore, both claims will be
addressed.

U.S. 317, 323 (1986). The party seeking summary judgment bears the burden of initially demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. If this burden is met, the non-moving party must then affirmatively demonstrate a genuine issue of material fact which requires trial. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). There is no issue for trial unless sufficient evidence favoring the non-moving party exists for a fact finder to return a verdict for that party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986); <u>Sylvia Dev. Corp. v. Calvert County</u>, 48 F.3d 810, 817 (4th Cir. 1995). Moreover, on summary judgment, the non-moving party is entitled "to have the credibility of [her] evidence as forecast assumed, [her] version of all that is in dispute accepted, all internal conflicts in it resolved favorably to [her], the most favorable of possible alternative inferences from it drawn in [her] behalf; and finally, to be given the benefit of all favorable legal theories invoked by the evidence so considered." <u>Charbonnages de France v. Smith</u>, 597 F.2d 406, 414 (4th Cir. 1979); <u>see</u> <u>Metric/Kvaerner Fayetteville v. Fed. Ins. Co.</u>, 403 F.3d 188, 197 (4th Cir. 2005).

### B.  Title VII Analysis

Rowe proffers no direct evidence of discrimination. Therefore, her Title VII discrimination and retaliation claims

6

proceed under the burden-shifting framework of <u>McDonnell Douglas</u> <u>Corp. v. Green</u>, 411 U.S. 792 (1973). <u>Lightner v. City of</u> <u>Wilmington</u>, 545 F.3d 260, 264-65 (4th Cir. 2008) (applying <u>McDonnell Douglas</u> framework to Title VII sex and race discrimination claims); <u>Belyakov v. Leavitt</u>, 308 F. App'x 720, 729 (4th Cir. 2009) (applying <u>McDonnell Douglas</u> framework to Title VII retaliation claims). Under the <u>McDonnell Douglas</u> framework:

> [T]he plaintiff-employee must first prove a prima facie case of discrimination by a preponderance of the evidence. If she succeeds, the defendant-employer has an opportunity to present a legitimate, non-discriminatory reason for its employment action. If the employer does so, the presumption of unlawful discrimination created by the prima facie case "drops out of the picture" and the burden shifts back to the employee to show that the given reason was just a pretext for discrimination.

<u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 959 (4th Cir. 1996) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 511 (1993)). At the second step, the defendant's burden is one of production, not persuasion. <u>St. Mary's Honor Ctr.</u>, 509 U.S. at 509. The ultimate burden of proving "the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Id.</u> at 507 (internal quotation marks omitted). Under the <u>McDonnell Douglas</u> framework, to survive a summary judgment motion the plaintiff must develop some evidence on which a juror could reasonably base a finding that

7

discrimination motivated the challenged employment action. Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004) (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000)). If a plaintiff fails to establish a prima facie case of discrimination or fails to raise a genuine factual dispute about the employer's legitimate, non-discriminatory explanation for the alleged discriminatory act, the defendant is entitled to summary judgment. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).

### 1. Sex and Race Discrimination

Title VII provides that "[i]t shall be an unlawful employment practice for any employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of . . . race . . . [or] sex. . . ." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of discrimination, Rowe must show by a preponderance of the evidence that: (1) she is a member of a protected group; (2) she applied for promotion and tenure; (3) she was qualified for promotion and tenure; and (4) she was rejected under circumstances giving rise to an inference of unlawful discrimination. Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll., 928 F.2d 118, 121 (4th Cir. 1991). These elements are addressed in turn.

8

### a. Protected Class and Application for Promotion and Tenure

The first two elements are clearly met because Rowe, an African-American woman, is a member of the protected classes of gender and race, <u>McDougal-Wilson v. Goodyear Tire and Rubber Co.</u>, 427 F. Supp. 2d 595, 606 (E.D.N.C. 2006), and she applied for promotion and tenure on October 18, 2006. (Doc. 19, Ex. A.)

### b. Qualification

Rowe must establish by a preponderance of the evidence that she was qualified for promotion and tenure. <u>Alvarado</u>, 928 F.2d at 121. In reviewing NC A&T's denial of her application, the court is cognizant that federal courts "operate with reticence and restraint regarding tenure-type decisions," recognizing that "professorial appointments necessarily involve subjective and scholarly judgments, with which we have been reluctant to interfere." <u>Jiminez v. Mary Washington Coll.</u>, 57 F.3d 369, 376–77 (4th Cir. 1995) (internal quotation marks omitted). Moreover, courts are cautioned not to "substitute their judgment for that of the college with respect to the qualifications of faculty members for promotion and tenure." <u>Id.</u> at 377 (quoting <u>Kunda v. Muhlenberg Coll.</u>, 621 F.2d 532, 548 (3d Cir. 1980)).

Under the University Tenure Regulations, the conferral of tenure at NC A&T "requires an assessment of the faculty member's demonstrated professional competence; [her] potential for future

9

contributions; [her] commitment to effective teaching, research, or public service; and the needs, resources, and the mission of the institution." (Doc. 16, Ex. 8, Ex. 1 § 3(A).) The Department of Manufacturing Systems in which Rowe worked has its own set of Tenure, Promotion and Reappointments Guidelines ("Department Guidelines"), which provide that candidates for promotion to the rank of Associate Professor "should meet the following minimum requirements": (1) a doctorate degree in his or her field of specialization; (2) demonstrated evidence of an active role in at least one of the departmental specified specialization areas; (3) a good record as a teacher; (4) a promising record of performance in research and/or creative activities; (5) normally a minimum of five years in rank as an Assistant Professor in the related Department of NC A&T; and (6) demonstrated ability to relate effectively to other faculty, administration, staff, and students. (Id., Ex. 9, Ex. 2 § 4-1.)

After a review of Rowe's portfolio and application, the Department RPT concluded she had not "demonstrated sufficient accomplishment in the area of research, grants and publications." (Id., Ex. 7 ¶ 10.) Members specifically noted that Rowe had not published a single article since joining NC A&T's faculty in 2002. (Id., Ex. 7 ¶ 10.) Moreover, she had not secured a large quantity or monetary total of grants, nor had she produced much in the way of research or publications

10

from the grants she had received. (Id., Ex. 7 ¶ 11.) The Department RPT also noted that she lacked the preferred five years of teaching experience in the Department and that, while that requirement was not absolute, she did not demonstrate any exceptional qualifications to merit early advancement. (Id., Ex. 7 ¶ 9.) The only member of the Department RPT who voted in favor of Rowe's application characterized his disagreement with his colleagues with respect to her qualifications as "a normal academic difference of opinion." (Id., Ex. 5 ¶ 10.)

The School RPT members echoed the evaluation of the Department RPT and "expressed concern about Rowe's lack of accomplishment in the area of research or publications since her arrival at [NC A&T]." (Id., Ex. 1 ¶ 11.) One member also noted that Rowe "did not provide sufficient documentation about her funded projects" and that "Rowe did not have sufficient grant or research funding to offset her lack of publications." (Id., Ex. 6 ¶ 14.)

Rowe does not discuss how she fulfills the criteria set forth in the University Tenure Regulations and presents very little evidence in support of her qualifications for promotion under the Department Guidelines. Although she points to her doctorate in Industrial Education and Technology from Iowa State University which she obtained in 2001, the fact is that at the

time of her 2006 application she had only been an Assistant Professor in the Department for four years.[5] (Doc. 19, Ex. A.)

Notably, in support of the crucial criteria of her performance in research activities, Rowe refers the court to her application, which lists three items under the title "Funded Research" and three items under the title "Publications." (Id., Ex. A.) One publication was dated 1997, and another 2001. (Id., Ex. A.) The third was listed as being "submitted for publication." (Id., Ex. A.) In her deposition, Rowe confirmed that she had not published any articles since she joined the NC A&T faculty in 2002 and that the submitted article was published in 2007, after the denial of her promotion and tenure application. (Doc. 16, Ex. 9 at 57-58.)

The party opposing summary judgment "may not rely merely on allegations or denials" but must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); see Anderson, 477 U.S. at 249 (holding there is no issue for trial unless "there is sufficient evidence favoring the nonmoving

---

[5] Rowe asks the court to find that she meets the requirements of a sufficient record as a teacher and an ability to relate to faculty, administrators, staff, and students on the grounds that they were not cited by NC A&T as deficient. (Doc 19 at 3-4.) Rowe only states in a conclusive manner that "the evidence will show" she meets these criteria (id.) and offers no more than a single faculty evaluation dated May 10, 2005, in which her teaching performance, research performance and/or professional growth, and service to the university and community were rated above average to superior. (Id., Ex. B.) Because these criteria do not factor in the ultimate resolution of the pending motions, they need not be considered herein.

party for a jury to return a verdict for that party"). Rowe fails to provide evidence that she possessed the qualifications necessary for promotion to Associate Professor and tenure, as published by NC A&T. Rather, she attacks the process NC A&T has devised for considering her application as inadequate for "get[ting] a significant portion of the faculty to agree that she is qualified for promotion and tenure if there are only three people voting." (Doc. 19 at 5.) Her complaint with the university's process, however, is not cognizable as a discrimination claim. Her conclusory, personal belief that she meets all of the requirements set forth by NC A&T, moreover, cannot create a genuine issue of material fact for trial. Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002) (stating that "conclusory or speculative allegations do not suffice, nor does a mere scintilla of evidence in support of his case") (internal quotation marks and citations omitted); Mackey, 360 F.3d at 469-70 ("A plaintiff's self-serving opinions, absent anything more, are insufficient to establish a prima facie case of discrimination.").

NC A&T's decision to deny Rowe promotion and tenure is precisely the type of professorial employment decision a federal court reviews "with great trepidation" and in which it is "reluctant to interfere." Jiminez, 57 F.3d at 376. On this record, it cannot be said that Rowe has proffered a genuine

13

issue of material fact that she was qualified for promotion and tenure to warrant jury consideration.

> **c. Whether Denial of Tenure and Promotion Occurred under Circumstances Giving Rise to An Inference of Unlawful Discrimination**

Rowe also fails to provide evidence that her application was denied under circumstances giving rise to an inference of unlawful discrimination by NC A&T. Thompson, 312 F.3d at 649. Rowe provides no evidence that she was discriminated against by anyone due to her status as an African-American. The record indicates that in the fall of 2006, in addition to Rowe, the School RPT reviewed six other applicants for promotion and/or tenure. (Doc. 16, Ex. 2 ¶ 17.) Of the six applicants, four were African-American males, one was an African male, and one was an Asian male. (Id., Ex. 2 ¶¶ 17, 19-20.) Three African-American males were granted promotion and tenure; one African male, one African-American male, and one Asian male were denied promotion and tenure. (Id., Ex. 2 ¶¶ 19-20.) Thus, the record simply does not support any legitimate inference of unlawful race-based discrimination during the 2006 application process. (Id., Ex. 2 ¶¶ 17, 19-20.)

Rowe fares no better with her discrimination claim based on sex. She admits that she has no direct evidence that sex was a factor considered by the members of the School RPT. (Id., Ex. 10 at 63, 65.) Moreover, every member of both the Department

14

RPT and School RPT indicated neither sex nor race played any role in the denial of her application, nor did any of them hear any remarks about her sex or race. (Id., Ex. 1 ¶15; Ex. 2 ¶ 18; Ex. 3 ¶ 14; Ex. 4 ¶ 15; Ex. 5 ¶ 14; Ex. 6 ¶ 15; Ex. 7 ¶ 15.) The members further stated that neither Rowe's sex nor race played any role in their own evaluations of her application. (Id.) Rowe does not provide any direct evidence to rebut these assertions.

Rowe contends that an inference of unlawful sex discrimination should be drawn because NC A&T denied her application for promotion and tenure but granted the application of an allegedly less qualified male applicant, Dilip Shah. (Doc. 19 at 4.) She argues that Shah, whose credentials she contends are inferior to her own, was granted tenure "in or around 2000," and attaches what purports to be a copy of Shah's resume to her brief. (Id., Ex. D.) Rowe has failed to authenticate the resume as accurate or complete, and it should not be considered on this ground alone. Orsi v. Kirkwood, 999 F.2d 86, 92 (4th Cir. 1993) ("It is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."). Moreover, Shah's sworn statement reveals that he was granted tenure in 1994, (Doc. 16, Ex. 7 ¶ 2), some twelve years earlier, and Rowe offers no indication of the applicable promotion and tenure standards when

15

Shah was considered from which any meaningful comparison could be made. <u>Demick v. City of Joliet</u>, 135 F. Supp. 2d 921, 939 (N.D. Ill. 2001) (finding single incident involving promotion of a male candidate over thirteen years ago was insufficient to allow a reasonable jury to find that similarly-situated males were treated more favorable than female plaintiff). This is simply too remote to be relevant to an inquiry of whether Shah was a similarly situated male candidate for the 2006 academic year. <u>Id.</u>; <u>Taylor v. Geren</u>, No. 5:08CV00034, 2008 WL 4531704, at *6 (E.D. Ark. Oct. 8, 2008) (holding woman promoted over fifteen years ago not similarly situated to support claim of intentional discrimination).

Rowe also argues that NC A&T's requirement that a candidate with less than five years of teaching experience as an Assistant Professor show "very exceptional circumstances" for promotion and tenure was fabricated in order to deny her candidacy. (Doc. 19 at 6.) This contention arises out of thin air and lacks even a shred of evidentiary support. It is therefore insufficient to support her discrimination claim. <u>Evans</u>, 80 F.3d at 960 ("While a Title VII plaintiff may present direct or indirect evidence to support her claim of discrimination, unsupported speculation is insufficient.").

In sum, Rowe has not presented evidence, other than her own unsubstantiated assertions, that she was either qualified for

16

promotion and tenure or that she was rejected under circumstances giving rise to an inference of unlawful discrimination. <u>Alvarado</u>, 928 F.2d at 121. Rowe's "own naked opinion, without more, is not enough to establish a prima facie case" of sex or race discrimination. <u>Goldberg v. B. Green & Co.</u>, 836 F.2d 845, 848 (4th Cir. 1988). Thus, Rowe fails to demonstrate a prima facie case of sex or race discrimination.

### d. Legitimate Non-Discriminatory Reason & Pretext

In addition to failing to meet the prima facie burden, Rowe's claims are doomed because NC A&T has proffered a legitimate, non-discriminatory motive for its denial of her application for promotion and tenure. NC A&T concluded after a review of her portfolio and application materials that she did not meet the requirements for promotion and tenure. The primary reason cited for denying her promotion and tenure in the fall of 2006 was her failure to publish any articles after her arrival at NC A&T in 2002. (Doc. 16, Ex. 7 ¶ 10.) Neither the Department RPT nor the School RPT found that she had sufficient accomplishments in the area of grants and publications. (<u>Id.</u>, Ex. 1 ¶ 11; Ex. 7, Ex. 2.) This conclusion was confirmed by an independent review by the School of Technology's interim dean, who specifically noted his belief that "Rowe needed additional

17

time to grow in the area of research, grants and publications." (<u>Id.</u>, Ex. 8 ¶ 10.)

It has been said that "publish or perish" is the watchword of academia, and courts have held that a lack of publication during a professor's term of employment at a school to be a legitimate, non-discriminatory reason for denial of tenure. <u>Rosado v. Va. Commonwealth Univ.</u>, 927 F. Supp. 917, 937 (E.D. Va. 1996) (finding the school met its burden to articulate a legitimate, non-discriminatory reason because "[t]he comments of the members of the promotion and tenure committees reflect a reasoned decision not to promote or grant tenure based on lack of a constant and satisfactory record of research and publication.").

Under the <u>McDonnell Douglas</u> framework, if NC A&T articulates a legitimate, non-discriminatory reason for its decision to deny Rowe's promotion and tenure application, Rowe must come forth with evidence that the proffered reason was pretextual. This burden is met only if Rowe proves "<u>both</u> that the reason was false <u>and</u> that discrimination was the real reason" for the denial. <u>Jiminez</u>, 57 F.3d at 378 (internal quotation marks and citation omitted). Rowe has provided no evidence that the conclusion that she lacked research and publications was false, nor has she produced any evidence of a discriminatory motive by anyone involved in the tenure and

18

promotion process. The fact that she believed her record of research and publication was sufficient to warrant tenure and promotion is immaterial, as "[i]t is the perception of the decision maker" as to her qualifications that is relevant, not Rowe's self-assessment. Evans, 80 F.3d at 960-61. And, not only has Rowe failed to present evidence that sex or race was a factor in the denial of her promotion and tenure, every member of all the committees involved in the decision-making process have provided sworn statements that those discriminatory factors were never considered. (Doc. 16, Ex. 1 ¶ 15; Ex. 2 ¶ 18; Ex. 3 ¶ 14; Ex. 4 ¶ 15; Ex. 5 ¶ 14; Ex. 6 ¶ 15; Ex. 7 ¶ 15; Ex. 8 ¶ 11.)

For the foregoing reasons, even if Rowe could make out a prima facie case, NC A&T has offered a legitimate, nondiscriminatory reason for its decision to deny her promotion and tenure, and Rowe does not present any evidence that NC A&T's proffered reason is false and pretextual. Finding no genuine issue of material fact for trial, summary judgment for NC A&T is granted on Rowe's sex and race discrimination claims.

### 2. Retaliation

Title VII prohibits an employer from retaliating against an employee who has "opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a). To succeed on a retaliation claim, plaintiff must prove

19

that (1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action. <u>Ziskie v. Mineta</u>, 547 F.3d 220, 229 (4th Cir. 2008).

Rowe contends that Shah, as chair of the Department RPT, influenced the Department RPT to deny her application for promotion and tenure in retaliation for her rejection of his sexual advances. (Doc. 19 at 6-8.) She also contends generally that NC A&T denied her promotion and tenure because of her complaints of sexual harassment.[6] (<u>Id.</u>)

The record indicates that it is impossible for Rowe to make out a prima facie case of retaliation by Shah. Rowe contends that Shah, who is single, made "one to five [telephone] calls" to her home over a matter of days, asking if he could visit her there. (Doc. 16, Ex. 9 at 26-28.) She claims these calls were sexual harassment, although Shah never said why he wanted to see

---

[6] Although Rowe filed two EEOC complaints, she does not rely upon them as the protected activity that caused the allegedly retaliatory conduct. (Doc. 19 at 8.) She concedes that no one, other than Walker, was aware that she filed them. (Doc. 16, Ex. 9 at 100.) The timing of her EEOC complaints, moreover, forecloses a retaliation claim. Rowe filed her first EEOC complaint alleging sex discrimination in March 2007 and her second EEOC complaint alleging sex discrimination and retaliation in April 2007. (<u>Id.</u>, Ex. 9 at 98-99.) Both EEOC complaints were filed after the Department RPT and School RPT voted in November 2006 against granting Rowe promotion and tenure. Walker issued his concurrence with those negative recommendations on January 12, 2007, well before either of Rowe's EEOC filings. (<u>Id.</u>, Ex. 8, Ex. 4.)

her and never called again. (Id., Ex. 9 at 28.) Rowe characterizes these calls in her brief as "the most aggressive advance" Rowe experienced and represents that they occurred in June 2006. (Doc. 19 at 7.) Her own testimony proves this false, however. Rowe makes clear that this alleged conduct occurred some five or more months later, *after* the Department RPT (on which Shah sat) had already rendered its decision in November 2006. (Doc. 16, Ex. 10 at 26, 28, 50.) Thus, even if the conduct could constitute sexual harassment, which is highly doubtful, it could not have been a basis for retaliatory action by Shah as a member of the Department RPT.

Moreover, Rowe cannot establish that anyone involved in the promotion and tenure decision-making process was ever aware of her alleged concern, because she concedes that she never complained about Shah's alleged sexual harassment or otherwise engaged in protected activity until March 2007, when she filed her first EEOC complaint. (Doc. 16, Ex. 9 at 89-92.) She admits, in fact, that she specifically chose *not* to disclose her concern to anyone at NC A&T. (Id., Ex. 9 at 91-92.) This is consistent with the sworn statement of every member of the Department RPT and School RPT committees that they had no knowledge of any complaints by her. (Id., Ex. 2 ¶ 23; Ex. 3 ¶ 18; Ex. 4 ¶ 19; Ex. 5 ¶ 18; Ex. 6 ¶ 19; Ex. 7 ¶ 19; Ex. 8 ¶ 16; Ex. 9 at 89, 99-100.) Rowe provides no evidence to the

contrary. Her claim, therefore, that Shah somehow tainted the review process because of the alleged harassment is wholly speculative and contrary to the evidence.

Rowe also argues that "various males" at NC A&T, including three named individuals, smiled at her, commented on "the way [she] looked," and made comments to her to the effect of, "[y]ou need to have some fun," "do you have a boyfriend?" and "[w]hy aren't you married?" (Doc. 19 at 7; Doc. 16, Ex. 9 at 25, 28-29.) Rowe concedes she "never was one to pick up on those type of advances" and only later claimed to believe that she was being harassed sexually. (Doc. 16, Ex. 9 at 25.) One of these persons was Ray Davis, whom Rowe eventually dated "for about a month." (Id., Ex. 9 at 29.) Rowe's deposition reveals that another who "sometimes" encouraged her to "relax" or "get yourself a boyfriend" was Walker. (Id., Ex. 9 at 29.) She did complain to Mosley, who sat on the Department RPT, once when another colleague asked her for a date, but this was in March or April 2007, well after the promotion and tenure decisions. (Id., Ex. 9 at 98.) In the end, Rowe does nothing to plausibly connect her subjective belief that she was being sexually harassed based on these incidents to her claim for retaliation.

Finally, Rowe's complaint alleges generally in the "Retaliation" cause of action that NC A&T created a hostile work environment designed to force her to quit (Doc. 1, Ex. A ¶ 23)

22

and forced her to write a letter of apology to another professor in retaliation for her complaints of sexual harassment by colleagues and supervisors (id., Ex. A ¶ 22). As to the former, Rowe fails to offer any evidence demonstrating that these alleged incidents were severe and pervasive enough to be actionable or evidence that she was constructively discharged. Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (holding "conduct must be extreme" to be actionably severe or pervasive); see Caldwell v. Johnson, 289 F. App'x 579, 585 (4th Cir. 2008) (noting prima facie hostile work environment claim requires showing, inter alia, that conduct was sufficiently pervasive or severe to alter the conditions of employment). As to the latter, she fails to address the allegation in her brief, thus waiving it. Moreover, on the court's own review, the only evidence of the letter incident is Rowe's testimony that she interrupted Shah during an April 26, 2007, faculty meeting and publicly rebuked him to "sit down," which Walker felt was rude and warranted an apology. (Doc. 16, Ex. 9 at 84, 86.) Rowe initially agreed to apologize, later disputed what she allegedly said (whether she used profanity), and ultimately refused to apologize or write the letter. (Id., Ex. 9 at 88–89.) These facts do not rise to the level of a retaliation claim. Faragher, 524 U.S. at 788. Moreover, inasmuch as the faculty meeting and refusal to apologize occurred well after all the

23

decisions on her promotion and tenure application had been made, Rowe cannot demonstrate that the denial of her application was in any way causally related to the incident. _Ziskie_, 547 F.3d at 229.[7]

For these reasons, a prima facie case for retaliation is therefore absent, and summary judgment must be granted in favor of NC A&T. _See_ _Celotex_, 477 U.S. at 322 ("the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**III. CONCLUSION**

Decisions on promotion and tenure in academia involve complex judgments as to scholarly potential. This court's role is limited to determining whether employment was denied because of a discriminatory reason. Finding no genuine issue of material fact of Title VII discrimination or retaliation, the court GRANTS Defendant NC A&T's motion for summary judgment (Doc. 16).

                                    /s/  Thomas D. Schroeder
                                   United States District Judge

June 10, 2009

---

[7]     Rowe does not argue, nor does the court find, that any alleged conduct constitutes retaliatory harassment creating a hostile work environment within the meaning of _Von Gunten v. Maryland_, 243 F.3d 858, 869-70 (4th Cir. 2001), _overruled on other grounds_ by _Burlington N. & Santa Fe. Ry. Co. v. White_, 548 U.S. 53, 67-68 (2006).